UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SALVADOR CONTRERAS,                )
                                                     )
                          Petitioner,     )    13 C 7306
                                                     )
                vs.                     )    Judge Feinerman
                                                     )
KIM BUTLER, Warden,             )
                                                       )
                           Respondent.    )

## MEMORANDUM OPINION AND ORDER

Petitioner Salvador Contreras, who is serving a lengthy sentence in Illinois state prison for the first degree murder of Octavio Guzman and the criminal concealment of his death, petitions for a writ of habeas corpus under 28 U.S.C. § 2254. Doc. 1. Contreras seeks habeas relief on the grounds that a prosecutor made improper statements during closing arguments, that the trial court made various errors in instructing the jury, and that his trial attorney was constitutionally ineffective for failing to put on testimony that Guzman was a violent person. Contreras's petition is denied, as are his requests for an evidentiary hearing and appointment of counsel. Contreras also is denied a certificate of appealability.

### Background

A federal habeas court presumes correct the state courts' factual findings unless they are rebutted by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Coleman v. Hardy*, 690 F.3d 811, 815 (7th Cir. 2012) ("We give great deference to state court factual findings. After AEDPA, we are required to presume a state court's account of the facts correct, and the petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence.") (internal quotation marks omitted); *Rever v. Acevedo*, 590 F.3d 533, 537 (7th Cir.

2010); *Conner v. McBride*, 375 F.3d 643, 652 (7th Cir. 2004). The Appellate Court of Illinois is the last state court to have adjudicated Contreras's case on the merits. *See People v. Contreras*, 2012 IL App (1st) 100704-U (Ill. App. June 8, 2012) (reproduced at Doc. 38-9); *People v. Contreras*, No. 1-06-2952 (Ill. App. Aug. 22, 2008) (reproduced at Doc. 38-1). The following sets forth the facts as that court described them, as well as the procedural background of the state criminal and post-conviction proceedings.

### A. Killing of Guzman

Contreras shot Guzman to death on November 3, 2003. Doc. 38-1 at 2. The two men were in a van, along with Jose Gonzalez, Mauro Trejo, and Israel Ramirez. *Ibid*. Contreras and Gonzalez are cousins, Gonzalez and Trejo are cousins, and Ramirez is Trejo's uncle. *Ibid*. Guzman, who was not related to any of the other four men, worked with Gonzalez, Trejo, and Ramirez growing marijuana in Wisconsin. *Id*. at 2-3.

Gonzalez, Trejo, and Ramirez suspected Guzman of stealing thirty pounds of marijuana. *Id*. at 3. They and Ramon Licona, another associate, armed themselves with handguns and drove the van to Guzman's house. *Ibid*. They ushered Guzman inside the van and then drove around for an hour, questioning him and drinking beer. *Id*. at 4. At one point Licona pistol-whipped Guzman and accidentally fired his gun, but no one was shot. *Ibid*. The men drove to Contreras's home and Licona and Contreras switched places; Licona gave Contreras his gun, and then Contreras drove Licona to his car, returned to his house, and took Licona's spot in the van. *Id*. at 4-5. The group started driving again. *Id*. at 5.

Sometime later Contreras and Guzman began to argue, then to scuffle. *Ibid*. Guzman grabbed Contreras's jacket and may also have grabbed his throat. *Id*. at 5-8. Contreras shot Guzman five times, killing him. *Id*. at 8, 13. Then Contreras and the other three men dumped

2

Guzman's body in an alley and stashed the van and the guns in Gonzalez's brother's garage. *Id*. at 8-9.

### B. Trial

The authorities eventually traced the shooting to Contreras, *id*. at 9-10, 12, and he was indicted in state court for: (1) first degree murder (with an enhancement for using a firearm, *see* 730 ILCS 5/5-8-1(a)(1)(d)(iii)), in violation of 720 ILCS 5/9-1(a); (2) concealment of a homicidal death, in violation of 720 ILCS 5/9-3.1(a) (codified as amended at 720 ILCS 5/9-3.4(a)); (3) aggravated unlawful restraint, in violation of 720 ILCS 5/10-3.1(a); and (4) aggravated unlawful use of a weapon, in violation of 720 ILCS 5/24-1.6(a). Doc. 38-14 at 27-57. He pleaded not guilty and the case headed to a jury trial.

Contreras's main theory at trial was that he shot Guzman in self-defense. Doc. 38-1 at 2. The prosecutor stated during closing arguments that "[t]here was no evidence whatsoever about self-defense, none." Doc. 38-31 at 58. Contreras's lawyer did not object. *Ibid*. Soon afterwards the prosecutor said that for Contreras to have killed Guzman in self-defense, Contreras had "to take a punch." *Id*. at 59. Contreras's lawyer did object to that remark, but the trial judge overruled the objection. *Ibid*.

The trial court based the jury instructions on the Illinois Pattern Criminal Jury Instructions (4th ed. 2000) ("IPI Criminal 4th"). The court issued IPI Criminal 4th No. 2.03A, which concerned the first degree murder charge and the interplay between first degree and second degree murder:

> The defendant is presumed to be innocent of the charges against him of first degree murder. This presumption remains with him throughout every stage of the trial and during your deliberations on the verdict and is not overcome unless from all the evidence in the case you are convinced beyond a reasonable doubt that he is guilty.

The State has the burden of proving that the defendant is guilty of first degree murder, and this burden remains on the State throughout the case. The defendant is not required to prove his innocence.

If the State proves beyond a reasonable doubt that the defendant is guilty of first degree murder, the defendant then has the burden of proving by a preponderance of the evidence that a mitigating factor is present so that he is guilty of the lesser offense of second degree murder and not guilty of first degree murder. In deciding whether a mitigating factor is present, you should consider all of the evidence bearing on this question.

Doc. 38-31 at 67. Contreras's lawyer did not request, and the court did not give, IPI Criminal 4th No. 2.03, which instructs that the defendant is presumed innocent of *every* charge:

The defendant is presumed to be innocent of the charges against him. This presumption remains with him throughout every stage of the trial and during your deliberations on the verdict and is not overcome unless from all the evidence in this case you are convinced beyond a reasonable doubt that he is guilty.

The State has the burden of proving the guilt of the defendant beyond a reasonable doubt, and this burden remains on the State throughout the case. The defendant is not required to prove his innocence.

Doc. 38-1 at 43.

Contreras's lawyer did ask the judge to give IPI Criminal 4th No. 7.03, which would have directed the jury to convict Contreras of second degree rather than first degree murder if it found that he killed Guzman because of a "serious provocation" by Guzman: "A mitigating factor exists so as to reduce the offense of first degree murder to the lesser offense of second degree murder if, at the time of the killing, the defendant acts under a sudden and intense passion resulting from serious provocation by the deceased. Serious provocation is conduct sufficient to excite an intense passion in a reasonable person." Doc. 38-31 at 7. The court refused that request, *id*. at 9, but it did give IPI Criminal 4th No. 7.05, which instructed the jury to convict of second degree rather than first degree murder if it found that Contreras killed Guzman because he unreasonably believed it was necessary to save his own life:

> A mitigating factor exists so as to reduce the offense of first degree murder to the lesser offense of second degree murder if at the time of the killing the defendant believes that circumstances exist which would justify the deadly force he uses, but his belief that such circumstances exist is unreasonable.

*Id*. at 69-70.

The jury convicted Contreras of first degree murder, the firearm enhancement, and concealment of a homicidal death.  Doc. 38-1 at 16-17.  The court sentenced him to fifty-five years' imprisonment.  *Id*. at 17.

### C.    Direct Appeal and Post-Conviction Review

Contreras appealed his conviction, arguing that: (1) the trial court should have suppressed various pieces of evidence; (2) the prosecutor's statements during closing arguments were improper; (3) the court should have given IPI Criminal 4th No. 7.03, the instruction on the provocation theory of second degree murder; (4) the court should have given IPI Criminal 4th No. 2.03, the general presumption of innocence instruction; and (5) the court's giving of IPI Criminal 4th No. 2.03A unconstitutionally shifted the burden of proof to Contreras.  Doc. 38-2. The Appellate Court of Illinois affirmed.  *People v. Contreras*, No. 1-06-2952 (Ill. App. Aug. 22, 2008) (reproduced at Doc. 38-1).  Contreras then filed a petition for leave to appeal ("PLA") with the Supreme Court of Illinois, pressing only the second, third, and fourth claims.  Doc. 38-4. The PLA was denied.  *People v. Contreras*, 900 N.E.2d 1120 (Ill. 2008).

Contreras then filed a post-conviction petition pursuant to the Illinois Post-Conviction Hearing Act, 725 ILCS 5/122-1 *et seq*.  Doc. 38-16 at 58-100.  His petition argued that his trial attorney was ineffective for failing to interview six people who could have testified at trial that Guzman was a violent person.  *Id*. at 69.  Contreras appended to his petition affidavits of eight people (those six people, plus Ramirez and Gonzalez) who stated that they knew that Guzman was "violent" and "ag[g]ressive."  *Id*. at 85-100.  The state trial court dismissed the petition,

*People v. Contreras*, No. 03-CR-26188 (Cir. Ct. Cook Cnty. Jan. 29, 2010) (reproduced at Doc.

38-16 at 102-10), and denied Contreras's motion to reconsider, Doc. 38-9 at ¶ 16.  Contreras

appealed and pressed the same ineffective assistance argument, but the state appellate court

affirmed.  *People v. Contreras*, 2012 IL App (1st) 100704-U (Ill. App. June 8, 2012) (reproduced

at Doc. 38-9).  That court denied Contreras's petition for rehearing, *People v. Contreras*, Nos. 1-

10-0704 & 1-11-0006, Cons. (Ill. App. Jan 8, 2013) (reproduced at Doc. 38-11), and the state

supreme court denied Contreras's PLA.  *People v. Contreras*, No. 115691 (Ill. May 29, 2013)

(reproduced at Doc. 38-13).

    Contreras then filed the present federal habeas petition.  He missed the one-year deadline

imposed by 28 U.S.C. § 2244(d)(1)(A), and the court initially dismissed the petition as time-

barred.  Docs. 23-24 (reported at 2014 WL 4771610 (N.D. Ill. Sept. 24, 2014)).  On

reconsideration, the court held that it had erred in dismissing the petition on limitations grounds,

and it ordered the Warden to answer the merits of the petition and Contreras to reply.  Docs. 32-

33 (reported at 2015 WL 586306 (N.D. Ill. Feb. 11, 2015)).

## Discussion

    Contreras's habeas petition asserts five grounds for relief: (1) that the prosecutor made

improper remarks during closing argument in violation of the Sixth Amendment; (2) that the trial

court violated the Sixth Amendment by failing to give IPI Criminal 4th No. 7.03, the "serious

provocation" second degree murder instruction; (3) that the court violated the Fourteenth

Amendment by failing to give IPI Criminal 4th No. 2.03, the general presumption of innocence

instruction; (4) that the court's giving IPI Criminal 4th No. 2.03A, which allocated to Contreras

the burden of proving a mitigating factor that would reduce first degree murder to second degree

murder, violated the Fourteenth Amendment; and (5) that Contreras's lawyer was

constitutionally ineffective for failing to present testimony that Guzman was a violent person. The fourth claim and part of the first claim are procedurally defaulted, and every other claim fails on the merits.

## I.      Procedurally Defaulted Claims

"To preserve a question for federal collateral attack, a person must present the contention to each level of the state judiciary." *Bland v. Hardy*, 672 F.3d 445, 449 (7th Cir. 2012) (citing *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999)).  Accordingly, "[a] procedural default occurs where a habeas petitioner has exhausted his state court remedies without properly asserting his federal claim at each level of state court review." *Crockett v. Hulick*, 542 F.3d 1183, 1192 (7th Cir. 2008) (internal quotation marks omitted).  Procedural default also prohibits federal court review of "a claim which was presented to the state courts but which was rejected on an independent and adequate state ground." *Smith v. McKee*, 598 F.3d 374, 382 (7th Cir. 2010) (citing *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991)).  The Warden argues that Contreras procedurally defaulted his fourth claim and part of his first claim.  Doc. 37 at 16-17, 25-26.

The Warden is correct on both counts.  The fourth claim takes issue with an instruction, IPI Criminal 4th No. 2.03A, that the trial court gave to the jury regarding the interplay between first and second degree murder:

> The defendant is presumed to be innocent of the charges against him of first degree murder.  This presumption remains with him throughout every stage of the trial and during your deliberations on the verdict and is not overcome unless from all the evidence in the case you are convinced beyond a reasonable doubt that he is guilty.
>
> The State has the burden of proving that the defendant is guilty of first degree murder, and this burden remains on the State throughout the case.  The defendant is not required to prove his innocence.
>
> If the State proves beyond a reasonable doubt that the defendant is guilty of first degree murder, the defendant then has the burden of proving by a preponderance of the evidence that a mitigating factor is present so that he is

> guilty of the lesser offense of second degree murder and not guilty of first
> degree murder. In deciding whether a mitigating factor is present, you should
> consider all the evidence bearing on this question.

Doc. 38-31 at 67. Contreras argues that the last paragraph of the instruction violated the

Fourteenth Amendment because it required him to prove his innocence rather than requiring the

government to prove his guilt. Doc. 1-1 at 1-2.

Contreras presented this argument to the state appellate court, Doc. 38-2 at 38, but he left

it out of his petition for leave to appeal to the state supreme court, Doc. 38-4. The habeas

petitioner in *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999), also failed to press certain claims in

his PLA to the state supreme court, and as a result the Supreme Court of the United States held

the claims procedurally defaulted. *Id*. at 840-41, 845. Under *Boerckel*, Contreras's fourth claim

is defaulted as well. *See Mulero v. Thompson*, 668 F.3d 529, 536 (7th Cir. 2012) (finding

procedural default where the petitioner raised a claim in the state post-conviction trial court but

not in the post-conviction appellate court); *Lockheart v. Hulick*, 443 F.3d 927, 929 (7th Cir.

2006) (finding procedural default where the petitioner's "petition for leave to appeal to the

Supreme Court of Illinois did not present a judicial-bias argument," but instead "asked the

Supreme Court to read other documents, such as his appellate brief"); *Hadley v. Holmes*, 341

F.3d 661, 664 (7th Cir. 2003) (finding procedural default where the petitioner "raised the ex post

facto claim in his state habeas corpus petition in the circuit court, but abandoned it in his appeal

to the appellate and supreme courts"); *Rodriguez v. Scillia*, 193 F.3d 913, 917 (7th Cir. 1999)

(finding procedural default where the petitioner raised a claim in the state appellate court but not

in his PLA); *Howard v. O'Sullivan*, 185 F.3d 721, 725 (7th Cir. 1999) ("Howard presented his

current claim to the state trial court, but by changing the basis of his argument between the trial

court and the appellate court, Howard did not fairly present the question of ineffective assistance

of trial counsel to the Illinois Appellate Court. Accordingly, he has procedurally defaulted that

claim."); *see also Norfleet v. Ryker*, 2013 WL 3482190, at *4-5 (N.D. Ill. July 11, 2013) (finding procedural default where the petitioner "failed to fairly present his Fourth Amendment claim to the state supreme court").

The first habeas claim contends that certain remarks by the prosecutor during closing argument violated the Sixth Amendment by misrepresenting the evidence and misstating Illinois law. Contreras focuses on two statements: (1) that "[t]here was no evidence whatsoever about self-defense, none"; and (2) that "under the law, you got to take a punch" to succeed on a self-defense claim. Doc. 1 at 9-12 (Contreras's petition); Doc. 38-31 at 58-59 (transcript of closing arguments). Contreras's attorney objected to the second statement but not the first. Doc. 38-31 at 58-59. When the state appellate court adjudicated the claim, it held that Contreras's silence had "waived" any claim for relief based on the first statement. Doc. 38-1 at 38. That holding is an adequate and independent ground to reject the claim on federal habeas review. *See Gray v. Hardy*, 598 F.3d 324, 329 (7th Cir. 2010) (holding that the Illinois doctrine of waiver is an adequate and independent state law ground); *Patrasso v. Nelson*, 121 F.3d 297, 301 (7th Cir. 1997) ("Forfeiture under § 2254 is a question of a state's internal law: failure to present a claim at the time, and in the way, required by the state is an independent state ground of decision, barring review in federal court.").

A habeas petitioner may overcome a procedural default (1) by demonstrating cause for the default and actual prejudice, or (2) by showing that the habeas court's failure to consider the claim would result in a fundamental miscarriage of justice. *See House v. Bell*, 547 U.S. 518, 536 (2006); *Smith*, 598 F.3d at 382. "Cause for a default is ordinarily established by showing that some type of external impediment prevented the petitioner from presenting his claim. Prejudice is established by showing that the violation of the petitioner's federal rights worked to his *actual*

and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."
*Thompkins v. Pfister*, 698 F.3d 976, 987 (7th Cir. 2012) (citations and internal quotation marks omitted). "The fundamental miscarriage of justice exception requires 'the habeas petitioner to show that a constitutional violation has probably resulted in the conviction of one who is actually innocent. To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.'" *Smith*, 598 F.3d at 387-88 (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). Contreras does not argue that either exception to the procedural default rule applies, so any such argument is forfeited. *See Perruquet v. Briley*, 390 F.3d 505, 515 (7th Cir. 2004) (holding that the petitioner bears the burden of proving an exception to procedural default); *Franklin v. Gilmore*, 188 F.3d 877, 884 (7th Cir. 1999) ("[P]rocedural default will be excused if a defendant can show that a failure to review the defendant's claims would result in a fundamental miscarriage of justice. Franklin, however, does not make this argument and we will not make it for him.") (citation omitted).

## II.    Claims Considered on the Merits

The second, third, and fifth habeas claims, and the portion of the first claim based on the prosecutor's statement about taking a punch, are not procedurally defaulted, so the merits must be addressed on habeas review. Because state courts have adjudicated those claims on the merits, they are subject to the strict standard codified in § 2254(d). "Federal habeas relief may not be granted for claims subject to § 2254(d) unless it is shown that the earlier state court's decision 'was contrary to' federal law then clearly established in the holdings of [the Supreme] Court, § 2254(d)(1); or that it 'involved an unreasonable application of' such law, § 2254(d)(1);

or that it 'was based on an unreasonable determination of the facts' in light of the record before the state court, § 2254(d)(2)." *Harrington v. Richter*, 562 U.S. 86, 100 (2011) (citation omitted).

With respect to § 2254(d)(1), a state court's decision is "contrary to" clearly established federal law "if the state court applies a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case differently than [the Supreme Court did] on a set of materially indistinguishable facts." *Bell v. Cone,* 535 U.S. 685, 694 (2002); *see also Brown v. Finnan,* 598 F.3d 416, 421-22 (7th Cir. 2010). "For purposes of § 2254(d)(1), an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Richter*, 562 U.S. at 101 (internal quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Ibid*. (internal quotation marks omitted). Put another way, to obtain relief under the "unreasonable application" prong of § 2254(d)(1), "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 103.

As for § 2254(d)(2), a state court decision involves an "unreasonable determination of the facts if it rests upon fact-finding that ignores the clear and convincing weight of the evidence." *Morgan v. Hardy*, 662 F.3d 790, 801 (7th Cir. 2011). "[A] state court's factual finding is never unreasonable 'merely because the federal habeas court would have reached a different conclusion in the first instance.' Rather, the state court's determination of the facts must have been an unreasonable error in light of the evidence presented to that court." *Collins v. Gaetz*, 612 F.3d 574, 586 (7th Cir. 2010) (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)). "[F]actual determinations of a state court are presumed to be correct and hence not 'unreasonable,' unless a

petitioner can show otherwise by clear and convincing evidence." *Conner v. McBride*, 375 F.3d 643, 649 (7th Cir. 2004); *see also Corcoran v. Neal*, 783 F.3d 676, 683 (7th Cir. 2015).

The non-defaulted portion of Contreras's first claim argues that the prosecutor deprived Contreras of a fair trial when she said that Contreras had to have "take[n] a punch" in order to have killed Guzman in self-defense. Doc. 1 at 10-12. (Contreras argues that the statement violated the Sixth Amendment, Doc. 1 at 12, but a claim that a state prosecutor's improper closing arguments made a trial unfair sounds in the Fourteenth Amendment, not the Sixth. *See Ellison v. Acevedo*, 593 F.3d 625, 635-36 (7th Cir. 2010); *Dortch v. O'Leary*, 863 F.2d 1337, 1345-46 (7th Cir. 1988).) Inappropriate closing argument by a prosecutor violates the Constitution only if the comments "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). To show that the statement denied him due process, Contreras must show that it was "improper and prejudicial." *United States v. Harper*, 662 F.3d 958, 962 (7th Cir. 2011); *see also Bartlett v. Battaglia*, 453 F.3d 796, 802 (7th Cir. 2006). "*Darden* sets a very high bar for a due-process challenge to a prosecutor's closing argument. In the main, the right response is argument from the defense or correction from the judge, not reversal on appeal" or collateral review. *United States v. Blagojevich*, 794 F.3d 729, 740 (7th Cir. 2015).

The "take a punch" comment was not even improper. Contreras contends that the comment misrepresented Illinois law, but the Appellate Court of Illinois disagreed:

> [S]omething more than choking was necessary to support a finding that
> defendant was acting in self-defense where the evidence demonstrated that the
> victim was unarmed, defendant and the victim were inside a van with a
> number of defendant's family members and friends who were questioning the
> victim about missing marijuana, the victim had been earlier struck in the head

by a gun by Licona, and defendant repeatedly shot the unarmed victim during the course of an argument.

Doc. 38-1 at 40-41. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)); *see also Rivera v. Sheriff of Cook Cnty.*, 162 F.3d 486, 488 (7th Cir. 1998) ("Federal judges may not issue writs of habeas corpus based on interpretations of state law that depart from the views the state courts themselves hold."). The court therefore must assume the prosecutor's statement was legally correct, and a correct statement of the law in closing arguments could not have rendered Contreras's trial unfair. In any event, the appellate court certainly did not unreasonably apply, or reach a decision contrary to, settled Supreme Court precedent when it rejected Contreras's claim based on the statement.

The second habeas claim contends that the trial court should have granted Contreras's request to give IPI Criminal 4th No. 7.03, the "serious provocation" instruction. As noted, the instruction would have read:

> A mitigating factor exists so as to reduce the offense of first degree murder to the lesser offense of second degree murder if, at the time of the killing, the defendant acts under a sudden and intense passion resulting from serious provocation by [Guzman]. Serious provocation is conduct sufficient to excite an intense passion in a reasonable person.

IPI Criminal 4th No. 7.03. Contreras argues that he presented evidence at trial that warranted the instruction, and that the trial court's refusal to issue the instruction deprived him of "a fair trial." . Doc. 1 at 8, 12-16. (Again, Contreras maintains that the failure to issue the instruction violated the Sixth Amendment, Doc. 1 at 16, but the claim is more properly classified as one for a violation of the Fourteenth Amendment's Due Process Clause. *See Beck v. Alabama*, 447 U.S. 625, 637-38 & n.14 (1980); *Nichols v. Gagnon*, 710 F.2d 1267, 1271 (7th Cir. 1983).)

This claim, too, would require this court to disagree with the state appellate court's interpretation of state law. The appellate court held that it would have been an error for the trial court to issue IPI Criminal 4th No. 7.03, reasoning that an instruction describing a theory of defense is appropriate only if "evidence in the record supports that theory." Doc. 38-1 at 41 (citing *People v. White*, 819 N.E.2d 1239, 1247 (Ill. App. 2004)). Illinois law treats an intentional killing as second degree murder rather than first degree murder if the defendant "act[ed] under a sudden and intense passion spurred from serious provocation that the law recognizes as reasonable." *Ibid.* (quoting *People v. Williams*, 732 N.E.2d 767, 778 (Ill. App. 2000)). But the appellate court held that none of the provocations that Contreras identified when he asked the trial court for the instruction was "reasonable." Contreras argued that Guzman insulted him by telling him he did not "have the balls to shoot," but "words alone are not sufficient provocation under the law to act as a mitigating factor." Doc. 38-1 at 42. And although "mutual combat or quarrel" sometimes qualifies as mitigating provocation, it does not qualify where, as here, the killer was armed and victim was not. *Ibid.* The court must accept as correct those determinations of state law, *see Corcoran*, 562 U.S. at 5; *Ruhl v. Hardy*, 743 F.3d 1083, 1098 (7th Cir. 2014), and the Constitution does not require a state court to instruct the jury on a defense that state law makes unavailable. *See Beck*, 447 U.S. at 635 (holding that a defendant can be entitled to an instruction on a lesser-included offense, but only "if the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater").

Even if the evidence at trial had established the basis for a second degree murder conviction under a provocation theory, Contreras could not prevail on his second habeas claim because he has not shown that the state appellate court's decision was contrary to, or involved an

unreasonable application of, then-existing Supreme Court precedent. *Beck* did hold that the Due

Process Clause requires state courts in capital cases to issue jury instructions about lesser-

included offenses that the evidence plausibly supports. 447 U.S. at 635-38. But *Beck* made clear

that its holding was limited to *capital* cases, explaining that the risk the jury would err on the

side of conviction if faced with an all-or-nothing choice "cannot be tolerated in a case in which

the defendant's life is at stake. … [D]eath is a different kind of punishment from any other which

may be imposed in this country." *Id*. at 637 (quotation marks omitted). And in a footnote, the

Court wrote that it "need not and do[es] not decide whether the Due Process Clause would

require the giving of [lesser-included-offense] instructions in a noncapital case." *Id*. at 638 n.14.

The Court has never extended *Beck*'s holding to noncapital murder trials like Contreras's. *See*

*Calloway v. Montgomery*, 512 F.3d 940, 944-45 (7th Cir. 2008) (holding in a habeas case that

there was no clearly established constitutional rule that a trial court must submit plausible lesser-

included offenses to the jury in a noncapital case). A habeas petitioner may not prevail by

appealing to legal propositions that the Supreme Court has expressly left unresolved. *See White*

*v. Woodall*, 134 S. Ct. 1697, 1703-04 & n.3 (2014) (holding that the state court's decision not to

issue an instruction did not unreasonably apply a Supreme Court precedent that "arguably" had

"le[ft] the door open" to the state court's decision).

Contreras's third habeas claim is that the trial court violated the Fourteenth Amendment

by failing to instruct the jury that Contreras was presumed innocent of all the charges against

him. The general presumption of innocence instruction at the time of Contreras's trial was IPI

Criminal 4th No. 2.03, which read:

> The defendant is presumed to be innocent of the charges against him. This
> presumption remains with him throughout every stage of the trial and during
> your deliberations on the verdict and is not overcome unless from all the

> evidence in this case you are convinced beyond a reasonable doubt that he is
> guilty.
>
> The State has the burden of proving the guilt of the defendant beyond a
> reasonable doubt, and this burden remains on the State throughout the case.
> The defendant is not required to prove his innocence.

Illinois courts must give that instruction in all trials in which another offense is charged along with first degree murder, *see People v. Nunn*, 829 N.E.2d 796, 803 (Ill. App. 2005), but the trial court in Contreras's case did not. (Although Contreras's lawyer did not ask for the instruction, the state appellate court resolved the claim on the merits, Doc. 38-1 at 43-44 so this court will too.) The trial court instead issued only IPI Criminal 4th No. 2.03A, the presumption of innocence instruction for first degree murder. As noted, that instruction stated in relevant part:

> The defendant is presumed to be innocent of the charges against him of *first
> degree murder*. This presumption remains with him throughout every stage of
> the trial and during your deliberations on the verdict and is not overcome
> unless from all the evidence in this case you are convinced beyond a
> reasonable doubt that the defendant is guilty.
>
> The State has the burden of proving that the defendant is guilty *of first degree
> murder*, and this burden remains on the state throughout the case. The
> defendant is not required to prove his innocence.

Doc. 38-31 at 67 (emphases added). Contreras was convicted of criminal concealment of a homicide death as well as murder, and he argues that the jury might not have presumed him innocent of criminal concealment because the judge did not give IPI Criminal 4th No. 2.03.

The Constitution requires trial courts to instruct juries that the defendant may be convicted only on proof of his guilt beyond a reasonable doubt. *See In re Winship*, 397 U.S. 358, 364 (1970); *see also Sullivan v. Louisiana*, 508 U.S. 275, 277-78, 281 (1993) (holding that a conviction obtained after a faulty instruction about the requirement of proof beyond a reasonable doubt requires reversal on appeal, even if the error was harmless). But the Supreme Court has never established that a trial court also must instruct the jury that the defendant is "presumed

innocent."  In fact, *Kentucky v. Whorton*, 441 U.S. 786 (1979), held that failing to issue a presumed innocent instruction violates the Constitution only if, "in light of the totality of the circumstances," the omission prevented the defendant from "receiv[ing] a constitutionally fair trial."  *Id*. at 789.  For example, in *Taylor v. Kentucky*, 436 U.S. 478 (1978), the Court held that the omission of a presumed innocent instruction violated the Constitution in a trial where the government's case was weak, the prosecutor made inflammatory statements during closing argument, and the other jury instructions were "Spartan."  *Id*. at 486-88, 490.

The appellate court in Contreras's case "appl[ied] a totality of the circumstances test" and held that the trial court's omission did not make his trial unfair.  Doc. 38-1 at 44.  (The appellate court cited not *Whorton* itself, but *People v. Nunn*, 829 N.E.2d 796, 804 (Ill. App. 2005), an Illinois case adopting *Whorton*'s standard.  *See Adams v. Bertrand*, 453 F.3d 428, 432 n.4 (7th Cir. 2006) ("a state court need not cite to the applicable Supreme Court case annunciating the standard, as long as the state court precedent cited agrees with it").)  That conclusion was reasonable, so § 2254(d)(1) bars relief on this claim.  Although the trial court did not inform the jury in general terms that it should presume Contreras innocent of *all* the charges against him, it did instruct the jury to acquit Contreras of the concealment charge "[i]f [it] f[ou]nd from consideration of all the evidence that any one of [the elements of the concealment charge] ha[d] not been proved beyond a reasonable doubt."  Doc. 38-31 at 74.  The judge also instructed the venire during *voir dire* to presume Contreras innocent of all charges, and a prosecutor acknowledged during closing arguments that Contreras was presumed innocent.  Doc. 38-18 at 9-10; Doc. 38-31 at 61.  It is extremely unlikely that the jury was confused about the burden of proof or the presumption of innocence on the concealment charge.

Moreover, unlike in *Taylor*, there was overwhelming evidence presented at trial that Contreras was guilty of the concealment charge. "A person commits the offense of concealment of homicidal death when he or she knowingly conceals the death of any other person with knowledge that such other person has died by homicidal means. … 'Conceal' means the performing of some act or acts for the purpose of preventing or delaying the discovery of a death by homicidal means." 720 ILCS 5/9-3.4(a). Four witnesses, including Contreras himself, testified that Contreras and his compatriots drove to an alley, ditched Guzman's body there, and then stashed in a garage the gun used to kill Guzman and the van in which Guzman was killed. Doc. 38-1 at 8-9, 15-16. That was more than enough for a conviction. *See People v. Cole*, 625 N.E.2d 816, 822 (Ill. App. 1993) (holding that the defendant could be convicted of criminal concealment after he left the victim's body "by a roadway in a remote location" and covered it); *People v. Mueller*, 474 N.E.2d 434, 437 (Ill. App. 1985) (holding that the defendant could be convicted of criminal concealment after he dumped the victims' bodies off of a bridge into a creek); *People v. Franklin*, 474 N.E.2d 776, 778, 781-82 (Ill. App. 1985) (holding that the defendant could be convicted of criminal concealment after he dropped the victim's body wrapped in a furniture cover in a field by a road). Given this, it was not unreasonable to hold that Contreras's trial on the criminal concealment charge was fair despite the lack of a general presumed-innocent instruction.

The fifth habeas claim is that Contreras's trial lawyer provided constitutionally ineffective assistance when he failed to introduce testimony that Guzman was a violent person. Contreras contends that several people could have testified that Guzman was prone to violence. Doc. 1-1 at 2-3. He appended affidavits from eight such people to his state court post-conviction petition. Doc. 38-16 at 85-100. The affidavits state that Guzman was "problematic" (*id*. at 85)

and "a problem kid" (*id*. at 89), that he would often get into fights (*ibid*.) and would threaten people (*id*. at 85, 99), that he "enjoyed robbing people" (*id*. at 93), and that on one occasion a relative shot him nine times (*id*. at 85, 87, 89, 97, 99). Contreras argues that his lawyer should have called those witnesses at trial to bolster his assertions that Guzman attacked him.

For Contreras to have prevailed in state court on his ineffective assistance claim, he had to show (1) that his attorney's performance was deficient and (2) that prejudice resulted therefrom. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). Contreras argues that § 2254(d)(2) makes relief available because the state appellate court relied on two unreasonable determinations of fact when it rejected his ineffective assistance claim: (1) it found that "there was no conflict at trial over what led petitioner to shoot the decedent"; and (2) it believed that the affidavits Contreras submitted said only that Guzman was oppositional rather than physically violent. Doc. 42-2 at 13.

The state court never made the first finding. It did state that "the accounts of the altercation that led to defendant fatally shooting Guzman were not conflicting," Doc. 38-9 at ¶ 27, but context reveals that the court did not mean that Contreras and the prosecutor entirely agreed about what happened; it meant only that the *legally essential* facts were uncontested:

> Here, the accounts of the altercation that led to defendant fatally shooting Guzman were not conflicting. Gonzalez, Trejo and Ramirez each testified that Guzman shouted at defendant and grabbed his jacket, apparently mistaking defendant for Licona, who had struck Guzman earlier. Guzman and defendant argued and wrestled. Defendant then shot the unarmed Guzman five times. Where, as here, the defendant becomes the aggressor in a purported self-defense case, that fact can support the exclusion of any evidence of the victim's aggressive tendencies.

*Ibid*. The facts that the court relied on—that Contreras was armed, that Guzman was not, and that Contreras was part of a group that had earlier committed violence against Guzman—have never been in dispute.

Contreras also cannot satisfy § 2254(d)(2) by pointing to the state appellate court's second supposed unreasonable finding—that the affidavits did not show that Guzman was violent. For one, the state court's interpretation of the affidavits was reasonable. It held that omitting the testimony did not prejudice Contreras because the testimony would not have been persuasive, Doc. 38-9 at ¶ 28, and in doing so it wrote:

> [T]he purported affidavits attached to defendant's petition do not indicate that Guzman had been convicted of any violent crime. Although a prior altercation or an arrest, without a conviction, can be adequate proof of violent character when it is supported by firsthand testimony as to the victim's behavior, the alleged affidavits in this case describe Guzman's general nature, *i.e.*, that he abused alcohol and drugs and had a combative personality. Because that potential testimony was of little or no probative value as to Guzman's violent character, defendant's case would not have been furthered had his trial counsel attempted to support defendant's version of the shooting by offering that testimony.

Doc. 38-9 at ¶ 28 (citation omitted). That is all true. The affidavits never state that Guzman had been convicted of a violent crime. Doc. 38-16 at 85-100. They do mention that Guzman often would carry guns, threaten people, and get into fights, but those allegations are about "Guzman's general nature." And while some of the affidavits refer to specific "altercations" and "arrests," none asserts that the affiant witnessed the events firsthand. Contreras has not shown that the court unreasonably misunderstood the affidavits, and much less shown it by clear and convincing evidence.

Even if the state appellate court did unreasonably misread the affidavits, its rejection of Contreras's ineffective assistance claim was not "based on" the misinterpretation, as necessary for relief under § 2254(d)(2). The court's primary reason for rejecting the ineffective assistance claim was that the proposed testimony would have been inadmissible under Illinois law. Doc. 38-9 at ¶ 27 ("Where, as here, the defendant becomes the aggressor in a purported self-defense case, that fact can support the exclusion of any evidence of the victim's aggressive tendencies.").

That holding alone justified rejecting the claim. A lawyer does not perform deficiently by failing to offer testimony the court would have suppressed anyway. *See Carter v. Douma*, 796 F.3d 726, 735 (7th Cir. 2015) (holding that "failing to make a futile objection" is not constitutionally deficient performance); *Lambert v. McBride*, 365 F.3d 557, 564 (7th Cir. 2004) (same); *United States v. Neeley*, 189 F.3d 670, 684 (7th Cir. 1999) (same); *United States v. Fish*, 34 F.3d 488, 495 (7th Cir. 1994) ("Where a motion for a continuance would prove futile, failure to seek one cannot constitute ineffective assistance."); *Sharpe v. Bell*, 593 F.3d 372, 383 (4th Cir. 2010) (holding that a state court reasonably applied *Strickland* where it concluded that, "since Highsmith's testimony was inadmissible, it was neither objectively unreasonable nor prejudicial to Sharpe's case to refrain from seeking its admission").

Contreras argues that his lawyer never even interviewed the potential witnesses, in violation of his "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. But a decision not to interview witnesses in order to gather inadmissible testimony is reasonable. Besides, counsel's failure to interview the witnesses could not have prejudiced Contreras; if he had interviewed the witnesses and then called them to testify, the trial court would have suppressed their testimony and everything else would have come out the same. *See Gilbert v. Merchant*, 488 F.3d 780, 795 (7th Cir. 2007) (holding that the trial lawyer's failure to object to the introduction of the defendant's confession into evidence was harmless because the trial court would not have suppressed the confession even if counsel had objected); *United States v. Kozinski*, 16 F.3d 795, 816-17 (7th Cir. 1994) (holding that a lawyer's decision not to present certain testimony did not harm the defendant, given that "the relevant testimony … was inadmissible hearsay"); *United States v. Podell*, 869 F.2d 328, 330 (7th Cir. 1989) (same as *Gilbert*).

The state appellate court's decision that the proposed testimony would have been inadmissible did not depend on its supposed misreading of the affidavits. Doc. 38-9 at ¶ 27. In other words, the alleged mistake did not affect the court's final disposition. Section 2254(d)(2) allows relief only if the state court's decision was "based on unreasonable determinations of fact," but the decision challenged here was not based on the supposedly bungled determination at all. *See Rhodes v. Dittmann*, 783 F.3d 669, 674-75 (7th Cir. 2015) ("Section 2254(d) focuses on the ultimate decision of the state court, not on parts of a written opinion that might in isolation appear to be misguided but that in the end are not necessary to the outcome.").

For the sake of completeness, and in case the procedural default ruling on the fourth habeas claim is open to doubt, the court will consider the merits of the claim—that the trial court's instruction on second degree murder unconstitutionally shifted the burden of proof to Contreras. As noted, the trial court instructed that "the defendant … has the burden of proving by a preponderance of the evidence that a mitigating factor is present so that he is guilty of the lesser offense of second degree murder and not guilty of first degree murder." Doc. 38-31 at 67. Contreras argues that that was improper because the Constitution required the *State* to prove that *no* mitigating factor was present. Doc. 1-1 at 1-2.

Although prosecutors must prove every element of a charged offense beyond a reasonable doubt, they need not disprove affirmative defenses. *See Martin v. Ohio*, 480 U.S. 228, 233 (1987); *Patterson v. New York*, 432 U.S. 197, 210 (1977) ("We … decline to adopt as a constitutional imperative … that a State must disprove beyond a reasonable doubt every fact constituting any and all affirmative defenses related to the culpability of an accused."); *United States v. Brown*, 276 F.3d 930, 932 (7th Cir. 2002) ("*Apprendi* leaves undisturbed the principle that while the prosecution must indeed prove all the elements of the offense charged beyond a

reasonable doubt, the legislation creating the offense can place the burden of proving affirmative defenses on the defendant.").  Whether a proposition is an element or a defense depends on how the statute defining the offense treats the proposition.  *See Patterson*, 432 U.S. at 214-16; *Davis v. Barber*, 853 F.2d 1418, 1423 (7th Cir. 1988) (holding that, because the Indiana statute did not list "ability to pay" as an element of the offense of failing to pay child support, the state constitutionally could give the defendant the burden of proving his inability to pay).  Because the Illinois statutes defining first and second degree murder explicitly give the defendant the burden of proving mitigation, *see* 720 ILCS 5/9-1(a), 9-2(c), the instruction was constitutional.  The appellate court did not unreasonably apply *Martin* or *Patterson*, or reach a decision contrary to those opinions, so the fourth habeas claim fails on the merits.

## III.     Contreras's Requests for an Evidentiary Hearing and Appointment of Counsel

Contreras asks the court conduct an evidentiary hearing.  Doc. 1 at 12, 16; Doc. 1-1 at 2, 6; Doc. 42-1 at 2; Doc. 42-2 at 13, 25.  But the Supreme Court has held that "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."  *Cullen v. Pinholster*, 563 U.S. 170, 131 S. Ct. 1388, 1398 (2011).  Because all of Contreras's claims, except for the claim based on the prosecutor's statement that there was "no evidence whatsoever of self-defense," were presented to and adjudicated on the merits by state courts, § 2254(d)(1) applies to this court's analysis of those claims, and so *Pinholster* forecloses the court from going beyond the state court record by holding a hearing to collect new evidence.  *See Mosley v. Atchison*, 689 F.3d 838, 844 & n.1 (7th Cir. 2012); *Price v. Thurmer*, 637 F.3d 831, 837 (7th Cir. 2011).  And the claim not presented to the state courts is procedurally defaulted, which means that a hearing would be futile.  Contreras's request for an evidentiary hearing therefore is denied.

Contreras also asks the court to appoint a lawyer to help him investigate his ineffective assistance claim in preparation for a hearing. Doc. 42-2 at 21-24. Given that there will be no hearing and that Contreras's ineffective assistance claim fails as a legal matter, Contreras's request for appointment of counsel is denied as well.

## Conclusion

For the forgoing reasons, Contreras's petition for a writ of habeas corpus is denied. Habeas Rule 11(a) provides that the district court "must issue or deny a certificate of appealability [('COA')] when it enters a final order adverse to the applicant." *See Lavin v. Rednour*, 641 F.3d 830, 832 (7th Cir. 2011). Regarding the procedurally defaulted claims, the applicable standard is:

> When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Anderson v. Litscher*, 281 F.3d 672, 673-74 (7th Cir. 2002). Regarding the remaining claims, the applicable standard is:

> To obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that ... includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.

*Slack*, 529 U.S. at 483-84 (internal quotation marks omitted); *see also Lavin*, 641 F.3d at 832; *Davis v. Borgen*, 349 F.3d 1027, 1029 (7th Cir. 2003).

This court's denial of Contreras's federal habeas claims relies on settled precedents and principles. The application of those precedents and principles to Contreras's petition does not

present difficult or close questions, and so the petition does not meet the applicable standard for granting a certificate of appealability.  The court therefore denies a certificate of appealability.


October 9, 2015

_____
United States District Judge